Slip Op. 18-89

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HUZHOU MUYUN WOOD CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Before: Gary S. Katzmann, Judge <br> Court No. 16-00245 <br><br> **PUBLIC VERSION** |

**OPINION**

[Commerce's rescission of the new shipper review cannot be sustained and Commerce is ordered to proceed with the new shipper review.]

Dated: July 16, 2018

Alexandra H. Salzman, DeKieffer & Horgan PLLC, of Washington, DC, argued for plaintiff. With her on the brief were Gregory S. Menegaz, J. Kevin Horgan, and Judith L. Holdsworth.

Tara K. Hogan, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant. With her on the brief were Chad A. Readler, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Claudia Burke, Assistant Director. Of counsel was Christopher Hyner, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC. With him on the brief was Mercedes C. Morno, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce of Washington, DC.

      Katzmann, Judge: In this second round of litigation, at issue is whether the single sale of multilayered wood flooring was commercially reasonable and thus *bona fide* for the purposes of a "new shipper review," the process for calculating individual antidumping duty rates for a shipper who had not previously exported a product covered by an antidumping order into the United States. Before the court is the United States Department of Commerce's ("Commerce") Final Results of Redetermination Pursuant to Court Remand Order (Dep't Commerce March 6, 2018) ("Remand

Redetermination"), ECF No. 39, which the court ordered in Huzhou Muyun Wood Co., Ltd. v. United States, 41 CIT ____, 279 F. Supp. 3d 1215 (2017) ("Muyun Wood I"). Plaintiff Huzhou Muyun Wood Co., Ltd. ("Muyun Wood") contests Commerce's Remand Redetermination, which concluded that the sale upon which the review was based was not *bona fide* and thus rescinded the review. Muyun Wood seeks another remand in which Commerce would proceed with the new shipper review and ultimately calculate its antidumping margin. Muyun Wood's Comments in Opp'n to Remand Results ("Pl.'s Br."), Apr. 5, 2018, ECF Nos. 42–43. Defendant the United States ("the Government"), on behalf of Commerce, asks the court to sustain the Remand Redetermination in its entirety. Def.'s Reply to Pl.'s Comments on Remand Results ("Def.'s Br."), May 7, 2018, ECF No. 44. The court determines that Commerce's conclusion that Muyun Wood's sale is not *bona fide* is not supported by substantial evidence. Consequently, the rescission of the new shipper review cannot be upheld, and the court orders Commerce to proceed with Muyun Wood's new shipper review.

## BACKGROUND

The relevant legal and factual background of the proceedings involving Muyun Wood has been set forth in greater detail in Muyun Wood I, 279 F. Supp. 3d at 1218–1223. Information pertinent to the instant case is summarized below.

**I.     Anti-Dumping Orders and New Shipper Reviews Generally.**

Dumping occurs when a foreign company sells a product in the United States for less than fair value, i.e., for a lower price than it sells that product in its home market. Sioux Honey Ass'n v. Hartford Fire Ins. Co., 672 F.3d 1041, 1046 (Fed. Cir. 2012). Congress enacted the Tariff Act

of 1930[1] to provide Commerce with a framework for detecting dumping and calculating a duty rate to offset the margin of dumping. Id. Either domestic producers or Commerce may initiate an investigation into potential dumping and, if appropriate, Commerce will issue an anti-dumping order containing the duty rates for dumped products. Id.; 19 U.S.C. §§ 1671, 1673. If a producer or exporter did not export merchandise during the period of investigation, it may request a "new shipper review." 19 U.S.C. § 1675(a)(2)(B). Commerce will conduct company-specific reviews of new exporters and producers that submit properly documented requests for review in order "to provide new shippers with an expedited review that will establish individual dumping margins for such firms on the basis of their own sales." Id.; Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103–316, vol. 1 at 875 (1994), reprinted in 1944 U.S.C.C.A.N. 4040, 4203.[2]

Commerce determines the normal value, export price, and resultant dumping margin for each entry of subject merchandise to determine a company's individual rate. 19 U.S.C. §1675(a)(2)(B)(i)–(ii). However, "any weighted average dumping margin . . . shall be based solely on the *bona fide* sales of an exporter or producer" to the United States. 19 U.S.C. §1675(a)(2)(B)(iv). The factors that Commerce has historically used to determine whether a sale is *bona fide*, discussed infra, pp. 8–9, have been codified in § 433 of the EAPA. In a *bona fide*

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant provision of Title 19 of the U.S. Code, 2012 edition. Citations to 19 U.S.C. § 1675, however, are to the unofficial U.S. Code Annotated 2018 edition. The current U.S.C.A. reflects the amendments made to 19 U.S.C. § 1675 (2012) by the Trade Facilitation and Trade Enforcement Act of 2015 ("EAPA"), Pub. L. No. 114–125, § 433, 130 Stat. 122, 171–73 (2016), which are integral to this case.

[2] The Statement of Administrative Action "shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and this Act in any judicial proceeding in which a question arises concerning such interpretation or application." 19 U.S.C. § 3512(d).

analysis, Commerce does not attempt to ascertain the fair value of the merchandise, but examines each sale for its commercial reasonableness. See Hebei New Donghua v. United States, 29 CIT 603, 374 F. Supp. 2d 1333 (2005). Commerce looks to the nature of the sale to make sure it was sold in a manner reasonably representative of the shipper's future commercial practice, and to ensure that the shipper is not attempting to circumvent the duty order. See H.R. Rep. No. 114–114(I) § 433, at 89 (2015).

Commerce may rescind a review if it concludes that "there has not been an entry and sale to an unaffiliated customer in the United States of subject merchandise" during the period of review ("POR"), and that "an expansion of the normal period of review to include an entry and sale to an unaffiliated customer in the United States of subject merchandise would be likely to prevent the completion of the review within the [required] time limits." 19 C.F.R. § 351.214(f)(2). "Commerce interprets the term 'sale' in § 351.214(f)(2)(i) to mean that a transaction it determines not to be a *bona fide* sale is, for purposes of the regulation, not a sale at all;" so, if no *bona fide* sales occur during the POR, Commerce may rescind the new shipper review. Shijiazhuang Goodman Trading Co. v. United States, 40 CIT ___, ___, 172 F. Supp. 3d 1363, 1373 (2016).

## II.    Initial New Shipper Review Proceedings.

Muyun Wood requested a new shipper review to calculate its dumping duty for its exports during the relevant POR, under the antidumping duty order on multilayered wood flooring from the People's Republic of China ("PRC"), on June 22, 2015. NSR Request. After additional filings by Muyun Wood, Commerce placed data from the sales databases of two mandatory respondents[3]

---

[3] In antidumping duty investigations or administrative reviews, Commerce may select mandatory respondents pursuant to 19 U.S.C. § 1677f-1(c)(2), which provides:

> If it is not practicable to make individual weighted average dumping margin determinations [in investigations or administrative reviews] because of the large

-- Dalian Dajen Wood Co., Ltd. and Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. ("Senmao") -- from the second administrative review ("AR2") of the multilayered wood flooring antidumping order. Dep't Letter: U.S. Sales Data from the AR2, P.R. 64, C.R. 52–54 (Apr. 12, 2016) ("AR2 data"). Commerce indicated that parties had one week to submit any comments on the data. Id. Muyun Wood and the other participant in the new shipper review – Dongtai Zhangshi Wood Industry Co., Ltd. ("Zhangshi") -- requested that Commerce clarify how it intended to use the AR2 data, that it issue a supplemental questionnaire, and that it extend the comment deadline to allow Muyun Wood and Zhangshi to respond to the supplemental questionnaire. Muyun Wood Clarification Letter, P.R. 65 (Apr. 13, 2016); Zhangshi Clarification Letter, P.R. 66 (Apr. 13, 2016). Citing statutory deadlines, Commerce declined to issue a supplemental questionnaire or extend the deadline, and indicated only that the "data may be used as part of the Department's analysis in this new shipper review." Dep't of Commerce Resp. to Clarification Request, P.R. 70 (Apr. 15, 2016). Muyun Wood timely submitted comments, reiterating its confusion about the potential use of the AR2 data. Muyun Wood Comments on AR2 Data at 1, P.R. 72.

Commerce issued its Preliminary Results on May 31, 2016. Multilayered Wood Flooring From the People's Republic of China, 81 Fed. Reg. 34,310 (Dep't Commerce May 31, 2016), and accompanying Preliminary Decision Memorandum (May 20, 2016) ("PDM"), C.R. 61.

---

number of exporters or producers involved in the investigation or review, the administering authority may determine the weighted average dumping margins for a reasonable number of exporters or producers by limiting its examination to—

> (A) a sample of exporters, producers, or types of products that is statistically valid based on the information available to the administering authority at the time of selection, or

> (B) exporters and producers accounting for the largest volume of the subject merchandise from the exporting country that can be reasonably examined.

Commerce found that Muyun Wood's sale was not *bona fide* for the purposes of the new shipper review because: (1) the price of Muyun Wood's sale was higher[4] than the highest priced sale of a Senmao CONNUM[5] from the AR2 with six of seven matching product characteristics and what Commerce viewed as significantly higher[6] than the average of the Senmao CONNUM; (2) the sale occurred late in the POR after a short negotiation; and (3) Muyun Wood was unable to show that its U.S. customer[7] resold its product for a profit. PDM at 1–7.

Muyun Wood submitted its case brief on July 7, 2016, arguing that its sale was *bona fide* because the difference in price between its product and the Senmao CONNUM could be explained by differences in the products' characteristics and changes in the market since the AR2, and that the sale did in fact follow commercial norms. Muyun Wood Case Br., C.R. 63, at 10–12. Muyun Wood also provided additional information to support its contention that its U.S. customer resold Muyun Wood's product for a profit. See Muyun Wood Third Suppl. Questionnaire Resp. at Exhibit SQ3-1, C.R. 59 (May 18, 2016).

In its October 17, 2016 Issues and Decision Memorandum for the final results of the new shipper review ("IDM"), Commerce concluded that Muyun Wood's sale was not *bona fide* and that the new shipper review should be rescinded. IDM at 24, P.R. 102, C.R. 67. Based on the new

---

[4] By [[     ]]. "[[   ]]" denotes information designated by a party as business proprietary information, which is not disclosed in the published opinion. Section 777 of the Tariff Act of 1930 prohibits disclosure of information "designated as proprietary by the person submitting the information" absent consent. 19 U.S.C. § 1677f (b)(1)(A). The business proprietary information is provided in the confidential version of the opinion issued to the parties. See USCIT Rule 73.2.

[5] Sales of individual products are denominated by product control numbers denoted as "CONNUMs."

[6] By [[     ]].

[7] The U.S. customer in question was [[                                       ]].

information, Commerce revised its view that Muyun Wood could not demonstrate that its U.S. customer sold Muyun Wood's product at a profit. IDM at 21. Commerce also agreed with Muyun Wood that the short sales negotiation was not atypical, given prior communication between Muyun Wood and its U.S. customer at a trade show. Id. However, Commerce continued to find that the sale was not bona fide due to the price difference between Muyun Wood's product and the Senmao CONNUM. Id. at 17–18. In addition, Commerce found that Muyun Wood had received payment from its U.S. customer nine days late, which it viewed as undermining the *bona fide* nature of the sale. Confidential Issues and Decision Memorandum ("Confidential IDM") at 3–4, C.R. 67 (Oct. 17, 2016). Commerce also stated that the fact that Muyun Wood made only one sale to the United States during the POR weighed against finding that the sale was *bona fide*. Id. at 10–11. Commerce published its rescission of the new shipper review in the Federal Register on October 26, 2016, and also stated that Muyun Wood would remain part of the PRC-entity for the purpose of assessing duties. Multilayered Wood Flooring from the People's Republic of China: Rescission of Antidumping Duty New Shipper Reviews, 81 Fed. Reg. 74,393, 74,393–94.

### III.    Proceedings Before This Court.

Muyun Wood contested Commerce's rescission of the new shipper review on three bases: (1) that Commerce abused its discretion by adding the AR2 data without clarifying its intended use and allowing parties only one week to submit comments; (2) that substantial evidence did not support Commerce's determination that Muyun Wood's sale was not *bona fide*; and (3) that Commerce's application of the PRC-entity rate was neither supported by substantial evidence nor in accordance with law.

This court found that Commerce had acted unreasonably by placing the AR2 data on the record a week before the factual record's statutorily required closure and inadequately explaining

that information's intended use. Muyun Wood I, 279 F. Supp. 3d at 1224. Noting that interested parties are permitted only "one opportunity to rebut, clarify, or correct factual information placed on the record of the proceeding by the Department by a date specified by the Secretary," 19 C.F.R. § 351.301(c)(4), the court held that Muyun Wood had not had a meaningful opportunity to present evidence "because Muyun Wood was not clearly apprised of what, specifically, it was meant to rebut," Muyun Wood I, 279 F. Supp. 3d at 1224. The court explained that Commerce is obligated to calculate antidumping duty margins as accurately as possible, NTN Bearing Corp. v. United States, 74 F.3d 1204, 1208 (Fed. Cir. 1995), and that providing interested parties a meaningful ability to comment on the information in the record and to submit rebuttal information, 19 C.F.R. § 351.301(c)(4), serves that goal. By placing a large amount of data on the record seven days prior to its closure, without specifying "the single element of that data that would ultimately be used in its new shipper analysis," Commerce denied Muyun Wood the opportunity to meaningfully comment or submit rebuttal information. Muyun Wood I, 279 F. Supp. 3d at 1225. The court therefore concluded that Commerce acted unreasonably and abused its discretion.

The court also found that substantial evidence did not support Commerce's determination that Muyun Wood's sale was not *bona fide*. When evaluating whether a sale is commercially reasonable, and thus *bona fide*, Commerce employs a totality of the circumstances test. Tianjin Tiancheng Pharm. Co. Ltd. v. United States, 29 CIT 256, 260, 366 F. Supp. 2d 1246, 1249 (2005). Under § 433 of the EAPA, when determining if sales are *bona fide*, Commerce "shall consider, depending on the circumstances surrounding such sales--

    (I)     the price of such sales;

    (II)    whether such sales were made in commercial quantities

    (III)   the timing of such sales;

>   (IV)    the expenses arising from such sales;
>
>   (V)     whether the subject merchandise involved in such sales was resold in the United States at a profit;
>
>   (VI)    whether such sales were made on an arms-length basis; and
>
>   (VII)   any other factor the administering authority determines to be relevant as to whether such sales are, or are not, likely to be typical of those the exporter or producer will make after completion of the review."

19 U.S.C. § 1675(a)(2)(B)(iv)(I-VII)).  In its Final Results, as explained in the IDM, Commerce noted that single sales were subject to more careful scrutiny, and found that in this context, the higher price compared to Senmao and allegedly late payment to Muyun Wood indicated the sale was not *bona fide* under the totality of the circumstances.  Commerce found that all of the other factors -- including whether Muyun Wood's product was resold in the United States for a profit -- did not suggest that Muyun Wood's sale was not *bona fide*.  IDM at 18, 23.

The court concluded that Commerce's use of the Senmao data was appropriate, but that Commerce's failure to take into account differences between the Senmao CONNUM and Muyun Wood's product that meaningfully impact the quality and prices of the product and Senmao's dumping margin were unreasonable.  Muyun Wood I, 279 F. Supp. 3d at 1228 (internal citations omitted).  The court also determined that record evidence did not support Commerce's determination that the brief, alleged payment delay existed or was long enough to be atypical for international commerce.  Id. at 1230–32.  Thus, the court held that Commerce's decision that Muyun Wood's sale was not *bona fide* was not supported by substantial evidence.  Id. at 1232. Accordingly, without expressing an opinion on the outcome, the court remanded the case for redetermination consistent with its opinion.  Id.  The court also stated that Commerce could, in its discretion, choose to reopen the record.  Id.

IV. **Remand Redetermination.**

During the remand phase, Commerce released a draft of its redetermination and provided an opportunity to comment on the draft. Remand Redetermination at 2. Commerce also reopened the record to add certain new factual information -- the most significant of which was a new sales data set for sales price comparison -- and provided interested parties with an opportunity to "correct, clarify, and rebut" it. Id. Muyun subsequently submitted rebuttal information and comments on the draft remand redetermination. Id.

On remand, Commerce reexamined Muyun Wood's sale and again concluded that it was not *bona fide*. Id. Commerce compared the price and quantity of Muyun Wood's sale to the prices of wood flooring sold by Dalian Penghong Floor Products Co., Ltd. ("Penghong"), a mandatory respondent during the contemporaneous fourth administrative review ("AR4") period. Penghong's multiple[8] sales had the exact same CONNUM as Muyun Wood's product. Id. at 9. Penghong received a 0.00 percent antidumping margin in AR4, and Penghong and Muyun Wood's sales were made on the same delivery terms. Id. at 10. Commerce found that the quantity of product Muyun Wood sold was typical when compared to Penghong's sales.[9] Id. at 9. However, Commerce determined that Muyun Wood's sales price was significantly higher than Penghong's average price and highest price, and was therefore atypical.[10] Id. at 10.

---

[8] [[   ]] sales, exactly.

[9] The quantity of Penghong's sales ranged from [[   ]] square meters to [[     ]] square meters, and Muyun Wood's sales quantity was [[       ]]. Remand Redetermination at 9.

[10] Penghong's sales price ranged from $[[    ]] per square meter to $[[    ]], and its average sales price was $[[    ]]. Id. at 10. Muyun Wood's sales price was $[[    ]], making it 17.65 percent higher than Penghong's highest price and 21.36 percent higher than Penghong's average price. Id.

Commerce also reexamined the information on whether Muyun Wood's U.S. customer had resold the goods at a profit. Id. at 16. Documents provided by Muyun Wood confirmed that the U.S. customer had resold a majority of the goods for a profit, but a portion remained unsold as of the date of documentation.[11] Id. Although Commerce had found that Muyun Wood had established resale profitability in the original Final Determination, IDM at 16, Commerce concluded on remand that Muyun Wood had failed to establish resale profitability because "the sales documents do not indicate that [the American customer's] goods, in their entirety, were resold at a profit," Remands Results at 16. Commerce concluded that this fact weighed against finding Muyun Wood's sale *bona fide*. Id.

Regarding the late payment factor at issue in Muyun Wood I, Commerce determined that information in the record was inconclusive as to whether the alleged late payment was atypical, and thus did not rely on this factor when concluding that Muyun Wood's sale was not *bona fide*. Id. at 13–15. Commerce also reexamined whether the transaction had been made on an arm's length basis and the expenses arising for the transaction, and again found that both of these factors suggested Muyun Wood's sale was typical and thus *bona fide*. Id. at 15–17.

Finally, Commerce considered whether any other factors were relevant to its *bona fide* analysis, and determined that Muyun Wood's sale was subject to increased scrutiny because no others were made during the new shipping review POR. Id. at 17. In light of the singular nature of the sale, the higher sales price, and resell profitability factor, Commerce decided that the totality of the circumstances suggested that Muyun Wood's sale was not *bona fide*. Id.

---

[11] Specifically, documentation showed that [[            ]] had resold 78.55 percent of the product by [[              ]], over [[        ]] from the original sale, with a gross profit margin of [[      ]] percent. The resale profitability of the remaining 21.45 percent of Muyun Wood's sale was not established. Id.

Muyun Wood filed its comments on the Remand Redetermination on April 5, 2018.  Pl.'s Br.  The Government submitted its reply to Muyun Wood's comments on May 7, 2018.  Def.'s Br.  Oral argument was held before the court on June 18, 2018.  ECF No. 53.

## JURISDICTION AND STANDARD OF REVIEW

The court reviews Commerce's remand redeterminations in accordance with the standard set forth in 19 U.S.C. § 1516a(b)(1)(B)(i), and thus "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."

## DISCUSSION

As noted, supra, pp. 8–9, Commerce takes into account a number of factors when determining whether, under the totality of the circumstances, a sale is *bona fide*.  Commerce's determination will be sustained unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States, 701 F.3d 1367, 1374 (Fed. Cir. 2012).  Substantial evidence is "more than a mere scintilla," but "less than the weight of the evidence." Altx, Inc. v. United States, 370 F.3d 1108, 1116 (Fed. Cir. 2004).  "A finding is supported by substantial evidence if a reasonable mind might accept the evidence as sufficient to support the finding." Maverick Tube Corp. v. United States, 857 F.3d 1353, 1359 (Fed. Cir. 2017) (citing Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)).  "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." CS Wind Vietnam Co. v. United States, 832 F.3d 1367, 1373 (Fed. Cir. 2016).  This includes "contradictory evidence or evidence from which conflicting inferences could be drawn."  Suramerica de Aleaciones

Laminadas, C.A. v. United States, 44 F.3d 978, 985 (Fed. Cir. 1994) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 487 (1951)).

Muyun Wood argues that Commerce's determination that Muyun Wood's sale is not *bona fide* is neither supported by substantial evidence nor in accordance with law because: (1) Commerce's comparison of Penghong's sales data to Muyun Wood's sale price failed to account for key differences between their products; (2) Commerce exceeded the scope of the remand order by considering factors other than the sales price and payment delay; (3) Commerce changed its interpretation of the same resale profitability data without explanation; and (4) Commerce impermissibly relied on the fact that there was only a single sale during the POR as a factor in its totality of the circumstances analysis. The court considers each of these contentions in turn.

**I.      Commerce's Sale Price Comparison Is Supported by Substantial Evidence.**

The Penghong product's CONNUM was identical to Muyun Wood's CONNUM, the data was from an administrative review contemporaneous with Muyun Wood's sale, and Penghong's product was not subject to an anti-dumping duty margin. Remand Redetermination at 9–10. Muyun Wood contends, however, that Commerce's CONNUM does not take into account all aspects of wood flooring products that affect price -- particularly, surface treatment and veneer type -- and that Commerce ignored evidence of this fact that Muyun Wood introduced to the record. Pl.'s Br. at 5. This argument is not persuasive. Commerce did consider the evidence that Muyun Wood submitted, but reasonably found that Muyun Wood's submissions did not establish that surface treatment and veneer type affected price. Remand Redetermination at 21–23. None of the product examples Muyun Wood provided to illustrate that surface treatment affected price contained important information about various other characteristics -- for example, traits included in the CONNUM -- and thus it could not be ascertained whether surface treatment or one of these

other, unaccounted for characteristics caused the price differentials. See Rebuttal Submission at Ex. 1. In addition, although Muyun Wood emphasizes that its sliced veneer production adds value to its product, neither the contract between Muyun Wood and the U.S. customer nor the contracts between the U.S. customer and resale customers mention the sliced veneer characteristic, which supports the conclusion that this characteristic is not commercially meaningful. See Section A Resp. at Ex. A-7; Third Suppl. Resp. at Ex. SQ3-1.

Muyun Wood also suggests that Commerce should only use Penghong's sales prices made in the same month as its own sale; however, Muyun Wood provides no support for why this alternative analysis would be superior to Commerce's or, more importantly, why Commerce's methodology was unreasonable. Further, as Muyun Wood concedes, its sale price would still be higher than the corresponding Penghong price by 19.35 percent. Pl.'s Br. at 3. Thus, Commerce's determination that Muyun Wood's price was high, and therefore atypical, is supported by substantial evidence.

## II.     Commerce Did Not Exceed the Scope of the Remand Order.

Muyun Wood claims that Commerce exceeded the scope of the remand order by considering factors of the *bona fide* test other than sales price and late payment. Pl.'s Br. at 9–10. Muyun Wood suggests that these were the only issues in controversy, and thus that the court's instruction to Commerce to "determine whether Plaintiff's sale during the POR was *bona fide* as discussed above" limited Commerce to consideration of the sales price and late payment factors. Id. at 9–10 (quoting Muyun Wood I, 279 F. Supp. 3d at 1232) (emphasis added by Muyun Wood). However, the issue in controversy in Muyun Wood I was whether, under a totality of the circumstances, Muyun Wood's sale was *bona fide*. See Muyun Wood I, 279 F. Supp. 3d at 1232 ("Commerce's conclusion that Muyun Wood's sale was not *bona fide* -- and, thus the rescission

of the new shipper review -- is not supported by substantial evidence on the deficient record before the court."). Thus, Commerce's examination of all *bona fide* test factors, considered in light of the totality of the circumstances, was not outside the scope of the Remand Order.

### III.     Commerce's New Resale Profitability Interpretation Is Contrary to Law.

In its original Final Results, Commerce found that Muyun Wood had established resale profitability; on remand, Commerce instead determined that Muyun Wood failed to establish resale profitability and that this "calls into question whether Muyun's single sale is *bona fide*." Remand Redetermination at 16. Commerce asserts that its new interpretation is consistent with its finding in the Final Results, because it had "caveats" about the resale profitability factor. Id. at 25–26. However, despite these "caveats," Commerce did find in the Final Results that Muyun Wood had adequately established resale profitability -- 78.55 percent was resold for a significant profit. Remand Redetermination at 16. Notably, Commerce has not explained why its conclusion has changed in the Remand Redetermination despite the fact that the record evidence regarding resale profitability remains the same on remand. Thus, Commerce has acted arbitrarily and capriciously with respect to this factor. See SKF USA Inc. v. United States, 263 F.3d 1369, 1382 (Fed. Cir. 2001) ("[A]n agency action is arbitrary when the agency offer[s] insufficient reasons for treating similar situations differently.") (internal quotation and citation omitted).

### IV.     Commerce's Treatment of the Singular Nature of the Sale Is Unreasonable.

The "singular nature" of the transaction under evaluation in a new shipper review is not one of the statutory factors enumerated in 19 U.S.C. § 1675(a)(2)(B)(iv)(I-VI)) for determining whether a sale is *bona fide*. See supra, pp. 8–9. It is established that single sales should be "carefully scrutinized to ensure that new shippers do not unfairly benefit from unrepresentative sales," Tianjin, 366 F. Supp. 2d at 1262. That said, it is not clear from the Remand

Redetermination exactly how Commerce here treated the singular nature of the sale in its calculus. Commerce points to the "catch-all" provision, 19 U.S.C. § 1675(a)(2)(B)(iv)(VII), providing that Commerce shall consider any factors that are relevant to the assessment of whether a sale is likely to be typical of a new shipper's future sales. Remand Redetermination at 27. Commerce characterizes its approach to the fact that Muyun Wood made a single sale as "careful scrutiny," see, e.g., Remand Redetermination at 27; yet, in several places in the Remand Redetermination, Commerce appears to treat the single sale the same as the enumerated statutory factors and indicate that the single sale itself is a reason for finding Muyun Wood's sale commercially atypical. See, e.g., id. at 18 (listing "the fact that there was only a single sale between Muyun and its new customer" as one of three reasons, along with higher price and resale profitability, for finding the sale "not reflective of normal business practices"). Commerce states that it "did not conclude that the singular nature of Muyun's sale was by itself atypical," but only that the single sale and higher price together suggest that the sale is not *bona fide*. Id. at 28. However, Commerce used similar language when describing the role of statutory factors in its analysis. See, e.g., id. at 16 (finding that, when the fact that the entirety of the goods were not resold for a profit is analyzed together with other aspects of the sale, it calls into question whether the sale is *bona fide*). Because Commerce's explanation regarding its use of the singular nature of Muyun Wood's sale is unclear, insofar as it appears to have invoked it, Commerce has failed to "articulate a satisfactory explanation for its action." Yangzhou Bestpak Gifts & Crafts Co. v. United States, 716 F.3d 1370, 1378 (Fed. Cir. 2013) (citing Amanda Foods (Vietnam) Ltd. v. U.S., 33 CIT 1407, 1416–17, 647 F. Supp. 2d 1368, 1379 (2009)).

V.     **Commerce's Determination that the Sale Is Not _Bona Fide_ Is Not Supported by Substantial Evidence.**

In sum, by definition, totality of the circumstances analyses are specific to particular cases, and the impact of various factors in determining whether a transaction is _bona fide_ may vary depending on the circumstances of the transaction. What is constant, however, is the basic Congressional rationale for requiring determinations based on _bona fide_ sales: to ensure that a producer does not unfairly benefit from an atypical sale to obtain a lower dumping margin than the producer's usual commercial practice would dictate. See Muyun Wood I, 279 F. Supp. 3d at 1226–27. In the instant case, as has been discussed, the sales price was determined to be atypical, and this determination was supported by substantial evidence and in accordance with law. Commerce suggests that, "[w]hile the sale satisfies certain aspects of the _bona fide_ analysis, the price factor, in particular, has significant weight, and cannot necessarily be offset by reiteration of other factors by which the sale could be considered typical," and cites Tianjin, 366 F. Supp. 2d at 1263, for support. Remand Redetermination at 18.[12] However, unlike in Tianjin, here the totality of the circumstances do not support a finding that the sale was not _bona fide_. In the matter before this court, Commerce determined that the sales quantity was typical, the expenses were normal, and the sale was made at arm's length. Remand Redetermination at 9, 15–17. Commerce did not find the payment timing to be atypical,[13] and a substantial majority of the product was resold for

---

[12] The Tianjin court indeed suggested that the price factor was the most important; however, two other statutory factors -- namely, payment that was nine months late and inconsistencies in import documentation -- supported the determination that the sale was not _bona fide_. Tianjin, 366 F. Supp. 2d at 1262–63. Although some other factors were normal, the court concluded that these three factors together provided substantial evidence for Commerce's determination that, under the totality of the circumstances, the sale was commercially unreasonable. Id.

[13] As discussed supra, Commerce determined the payment timing factor -- which was at issue in Muyun Wood I -- was inconclusive. Remand Redetermination at 13. Although in its briefing Muyun Wood expressed some concerns about Commerce's analysis of this factor, Pl.'s Br. at 15–

a significant profit.[14]  In short, because consideration of all of the factors in the totality of the circumstances analysis do not suggest that the sale was commercially unreasonable, Commerce's decision that Muyun Wood's sale is not *bona fide* is not supported by substantial evidence.

## CONCLUSION

For the reasons stated above, the court concludes that Commerce's determination that Muyun Wood's sales price was high is supported by substantial evidence and that Commerce did not exceed the scope of the remand redetermination by considering the totality of the circumstances of the sale.  However, Commerce's ultimate conclusion that the sale was not commercially reasonable overall and not *bona fide* is not supported by substantial evidence.  Consequently, the rescission of the new shipper review cannot be upheld.  Commerce is ordered to proceed with Muyun Wood's new shipper review.  Judgment shall be entered accordingly.

**SO ORDERED**.

/s/  *Gary S. Katzmann*
Gary S. Katzmann, Judge

Dated: July 16, 2018
New York, New York

---

16, both parties agree that Commerce did not rely upon it when finding Muyun Wood's sale not *bona fide*, Oral Arg.  The payment timing factor is thus not in dispute in this case.  Id.

[14] 78.55 percent with a gross profit margin of [[     ]] percent.  Remand Redetermination at 16.